RECEIVED IN CLERK'S OFFICE
U.S.D.C. Atlanta

AUG 27 2019

JAMES N. HATTEN, Clerk
By_____ Deputy Clerk

# UNITED STATES DISTRICT COURT
### for the
### NORTHERN DISTRICT OF GEORGIA
### ATLANT DIVISION

| | |
|---|---|
| TANDRA G. TEMPLE,<br><br>    Plaintiff,<br><br>vs.<br><br>BRENDA C. TEMPLE,<br>WRPV XII PEACHTREE BATTLE, L.L.C.,<br>WATERTON ASSOCIATES, L.L.C.,<br>WATERTON RESIDENTIAL<br>    d/b/a Peachtree Apts.,<br>WATERTON RESIDENTIAL, L.L.C.,<br>WATERTON PROPERTY MANAGEMENT<br>    OF DELAWARE, L.L.C.,<br>DAVID SCHWARTZ, Chairman and CEO<br>    of Waterton Associates, L.L.C.,<br>PETER VILIM, Vice-Chairman of Waterton<br>    Associates, L.L.C.,<br>VALENCIA EDWARDS, Manager of 2460<br>    Peachtree at Peachtree Battle and as an<br>    Individual,<br>DAVID SCHARFENBERG, V.P. Regional<br>    Operations at Waterton,<br>HONORABLE JOHN De FOOR, Fulton County<br>    Magistrate Court Judge,<br>PHILLIP BARNES, Esq.,<br>FOWLER, HEIN, CHEATWOOD &<br>    WILLIAMS, PA,<br>JOHN DOE 1-10,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

Case No.  1:19-CV-3867

42 U.S.C. § 1983
DUE PROCESS CLAUSE

BREACH OF CONTRACT
VIOLATIONS OF THE GEORGIA
    TORT CLAIMS ACT

**DEMAND FOR JURY TRIAL**

## COMPLAINT
## AND EMERGENCY TEMPORARY INJUNCTION

Plaintiff, Tandra G. Temple, brings this civil action to rectify Plaintiff's damages under 42

U.S.C. § 1983, Fourteenth Amendment to the U.S. Constitution, Due Process Clause, Breach of

Contract and Violations of the Georgia Tort Claims Act. Plaintiff also demands a jury trial. Because Plaintiff is indigent, she cannot afford an attorney; therefore, she has no choice but file this complaint, pro se. Ms. Temple asks this Court to respect her as a pro se litigant and to afford her the opportunity to litigate this complaint. Ms. Temple is professional and respects the Court's time during adjudication of the case at bar. Plaintiff respectfully shows and alleges as follows:

## I.   PARTIES TO THIS COMPLAINT

1.     Plaintiff Tandra G. Temple ("Temple") is a 60-year-old woman. She lives at 2460 Peachtree Road, NW, Apt. #1703, Atlanta, GA, 30305 in Peachtree at Peachtree Battle Apartments ("2460 Peachtree"). She and her sister, Defendant, Brenda C. Temple, have lived as roommates at 2460 Peachtree since 2016.

2.     Defendant, Brenda C. Temple ("BTemple"), and Plaintiff are sisters. The sisters were roommates at 2460 Peachtree from June 2016 – May 2019. BTemple has moved to 6535 Trenton Pl., Charlotte, NC, 28226.

3.     WRPV Peachtree Battle Atlanta, LLC ("WRPV") is listed on the Fulton County tax records website as the owner of the apartment building located at 2460 Peachtree Road, NW, Atlanta, GA, 30305. However, WRPV Peachtree Battle, LLC is not listed on the Georgia Secretary of State business website as an LLC doing business in Georgia, nor in the City of Atlanta. However, WRPV Peachtree Battle is listed on the City of Atlanta business website as having a business license.

4.     Waterton Associates, L.L.C. ("Waterton Assoc.") is an apartment and hotel management company plus an investment company, owned and operated by its founders, David Schwartz and Peter Vilim, who are also named as Defendants in the case at bar. Waterton Associates, LLC is listed on the Illinois Secretary of State website as an active limited liability

company. Waterton Assoc. has a City of Chicago business license doing business as Waterton Residential in Illinois. Waterton Associates, LLC is located at 30 S. Wacker Drive, Suite 3600, Chicago, IL, 60606.

5.     Waterton and Associates ("W&A"), Inc. is not listed as an LLC on the Georgia Secretary of State website as an LLC doing business in Georgia. However, W&A is listed in the Fulton County personal tax records as the Lessors of Residential Buildings and Dwellings. W&A also states it is doing business as Waterton Residential. To make this even more confusing, the mailing address for W&A is P.O. Box 56607, Atlanta, GA, 30343.  Address for service is unknown.

6.     Waterton Residential d/b/a 2460 Peachtree Apts. ("Waterton Residential") is listed as the Plaintiff on a Fulton County Magistrate Court Notice of Dispossessory, with the address 2460 Peachtree Road, NW, Atlanta, GA, 30305.

7.     Waterton Property Management of Delaware, L.L.C. ("WPM Delaware") is listed on the Peachtree Battle at Peachtree Battle Apartment website, www.2460peachtree.com. Plaintiff has searched for this limited liability company ("LLC") on a number of various Secretary of State website, she cannot find this LLC. Address unknown.

8.     David Schwartz ("Schwartz") is the Co-Founder, CEO and Chairman of Waterton Asso., LLC. His office is located at 30 S. Wacker Dr., Suite 3600, Chicago, IL, 60606.

9.     Peter Vilim ("Vilim") is the Co-Founder and Vice-Chairman of Waterton Associates, LLC. His office is located at 30 S. Wacker Dr., Suite 3600, Chicago, IL, 60606. His office is located at 30 S. Wacker Dr., Suite 3600, Chicago, IL, 60606.

10.     Valencia Edwards ("Edwards") is the property manager at 2460 Peachtree. Temple is suing her as an agent for the landlord and as an individual. Her address is 2460 Peachtree Road, NW, Atlanta, GA, 30305.

11.     David Scharfenberg ("Scharfenberg") is Vice-President Regional Operations over Eastern United States for Waterton. Address is unknow.

12.     Fulton County Magistrate Court Judge, Honorable John De Foor ("Judge De Foor"), is named as a defendant under 42 U.S.C. § 1983 in violation of Temple's right to procedural due process. His office address is 185 Central Ave., SW, T-8755, Atlanta, GA, 30303.

13.     Phillip C. Barnes ("Barnes") is an attorney with Fowler, Hein, Cheatwood & Williams, PA. Barnes represented Waterton Residential d/b/a 2460 Peachtree Apts. in the Dispossessory proceedings. He is an officer of the court. He is being sued under 42 U.S.C. § 1983 in violation of Temple's right to procedural due process. Barnes' address is Fowler Hein Cheatwood & Williams PA, 2970 Clairmont Road, Suite 220, Atlanta, GA, 30329.

14.     Fowler, Hein, Cheatwood & Williams, PA ("Fowler, PA") is named as respondent superior for Phillip Barnes, under 42 U.S.C. § 1983 in violation of Temple's right to procedural due process. However, the firm is not listed on the Georgia Secretary as an active corporation.

15.     Because Waterton has created a labyrinth of limited liability companies, corporations and trade names throughout the US, Plaintiff has listed John Doe 1-10. Plaintiff has focused her research in Georgia, Illinois and Delaware to identify the actual corporation to be named as a defendant; however, through discovery, Plaintiff will ascertain the correct names and/or additional defendants.

## II.     **BASIS FOR JURISDICTION AND VENUE**

16.     Plaintiff relies on 28 U.S.C. § 1331, which confers jurisdiction for civil actions arising under federal law. Plaintiff's claims present a federal question.

17.     Plaintiff also relies on 28 U.S.C. § 1367, for supplemental jurisdiction over her state and common law claims.

18.     Venue is proper in the Northern District of Georgia, Atlanta, Georgia because 2460 Peachtree at Peachtree Battle apartment building is in Atlanta, Georgia. A substantial part of events or omissions giving rise to Plaintiff's claims occurred in Fulton County, Georgia. 28 U.S.C § 1391(b)(2). Defendants transacted a substantial part of their affairs in Fulton County, Georgia. 18 U.S.C. § 1965(a). Fulton County is located within the Northern District of Georgia, Atlanta Division.

## III.   **INTRODUCTION**

### a.   **Part 1**

19.     Temple is a sixty-year-old woman, who was a very successful real estate agent from 1987 through 2007. She was an agent with Harry Norman Realtors in the Buckhead office, formerly located at 77 West Paces Ferry Road, Atlanta, Georgia. Temple is well educated; has a strong work ethic; and has always prided herself in her successes as a business woman and as an older mother. During her years as a real estate agent, Temple's income was consistently well into six figures. Temple married in 1999; she had her one, and only, child in 2000 when she was 41-years-old. When her son was turned five, Temple began her retirement from real estate, so she could be a stay at home mom. In 2007, Temple filed for divorce to get out of a very toxic and abusive marriage.

20.     In 2008, Temple and her sister, defendant, BTemple, purchased a farm in Waynesville, NC. Temple and BTemple purchased the property for $695,000.00. The purchase of

the farm is the genesis of the complaint Breach of Contract and violations of the Georgia Tort Claims Act.

21.     When BT and Ms. Temple purchased the farm in November 2008, the parties agreed to split 50/50 *all* costs associated with the farm which included, but not limited to, the note, taxes, utilities, maintenance and repairs, any and all costs etc. BTemple moved to the farm from Atlanta in January 2009.

22.     However, in August 2009, BTemple breached her contract with Temple and stopped paying her half of all the expenses. She moved back to 2460 Peachtree in August 2009.

23.     Through no fault of her own, Temple has been forced into poverty; lost custody of her son; *and* lost her reputation, both as a person and as a business woman. Through the acts and/ or omissions of BTemple, Temple's former life has been destroyed. Temple has suffered financial, personal, medical and mental injuries, emanating from Defendants' deliberate acts and omissions, as part of a conspiratorial scheme to defraud Ms. Temple of money, property and benefits of monetary value.

24.     In 2016, Temple moved in with her sister at 2460 Peachtree. They have been roommates since January 2016. BTemple agreed to pay all of Temple's expenses.

25.     In April 2019, Temple and BTemple agreed that BTemple would pay all of Temple's expenses for one more year beginning June 1, 2019 through the end of the lease. BTemple signed the lease in April to take advantage of a discount to sign the lease early.

26.     Temple agreed to a forbearance on BTemple's debt of one million two hundred fifty thousand dollars ($1,250,000.00) to Temple for the loss of the farm, personal property and the 5 business when the farm went into foreclosure. If BTemple performed on this contract, Temple

would forgive the debt. However, should BTemple breach the contract, BTemple would pay the 1.25 million she owed her sister.

27.     On June 2, 2019 BTemple breached her contract with Temple.

**b.  Part Two**

28.     The nexus between Part One and Part Two of the complaint, is the collusion between BTemple and Edwards, the property manager, to illegally evict Temple from her apartment.

29.     Self-help eviction is illegal in the state of Georgia. However, on June 2, 2019, BTemple and Edwards, conspired and successfully conducted a willful, wanton, malicious, wrongful constructive eviction on Temple. The facts of the malicious self-help eviction are set forth below. Temple was harassed, threatened to be incarcerated, humiliated in front of her neighbors, forced to sit in the apartment building lobby in her pajamas plus Edwards and BTemple called the police five (5) times to force Temple off the property.

**c.  Part Three**

30.     Part Three arises from the second fraudulent dispossessory and intentional violation of Temple's right to a fair and unbiased tribunal plus, the denial of her right to be heard before an impartial tribunal who violated her right to procedural due process.

31.     At the dispossessory hearing before Judge De Foor on August 6, 2019, in concert with Barnes, Temple was denied, not once, but three times her right to be heard. Temple had timely had filed prior to the hearing, her Answer and Counterclaim, Amended Answer and Motion to Dismiss, all of which Judge De Foor denied Temple's right to argue and object to Waterton Residential's fraudulent notice of dispossessory.

32.     When Barnes refused to allow Temple's participation in the mediation, and he became exceedingly hostile toward Temple, she knew her pleadings had merit and the notice should have been dismissed. Barnes and Judge De Foor colluded to deny Temple's inalienable Constitutional right to be heard.

## IV.   STATEMENT OF FACT

### a.  General

33.     Temple has been a resident of 2460 Peachtree Road, NW, #1703, Atlanta, GA, 30305, since March 1, 2018.

34.     Temple lived with her sister, BTemple, who was a resident at 2460 Peachtree Road, NW, #1703, Atlanta, GA, 30305.

35.     BTemple is very volatile, malicious and aggressive toward her sister.

36.     Temple, through no fault of her own, was forced to be indigent, homeless, car-less, penniless and all that comes with being poor.

37.     BTemple's intentional, malicious and fraudulent actions or omissions for more than over ten (10) years, is the proximate cause of Plaintiff's loss of over $1,250,000.00 in real property, personal property, including but not limited to, furniture, artwork, jewelry, memorabilia, five (5) businesses and more.

### b.  Apple Hill Farms

38.     In June 2008, Plaintiff and BTemple took their mother to Waynesville, NC to celebrate her 81st birthday. On the ride up the mountain to a dear friend's home, they passed a beautiful farm in Plott Valley. All three loved the farm; however, it was not for sale at that time.

39.     Their mother lived at 2460 Peachtree Road, NW, Apt. # 1803, Atlanta, GA, 30305 from 2006 to 2008 when she passed away on July 12, 2008.

40.     After their mother passed, BTemple decided to move to Waynesville, NC to be close to their family friend.

41.     BTemple began looking for rental property in Waynesville. One day she drove by the farm and saw the farm property was for sale. She immediately called her sister, the plaintiff, and told her the property was for sale. Temple told BCT to make an appointment to view the property the following day. Temple drove to Waynesville from Atlanta that night to view the property with her sister the following morning.

42.     Thylander, who represented the sister's as their buyer's agent, showed them the property the following day. The property was listed for seven hundred ninety-five thousand dollars ($795,000.00).

43.     While Temple was in Waynesville, the sisters decided to buy the property together and use their inheritance from their mother's estate to purchase the farm.

44.     While in Waynesville, the sisters agreed to split 50/50, all cost associated with the farm. Thylander was fully aware of the agreement between the sisters, plus she stand to gain a sizeable commission. Thylander knew BTemple planned to move to the farm after closing.

45.     Temple and BTemple made an offer for six hundred fifty thousand dollars ($650,000.00). The buyers and seller agreed on a sale's price of six hundred ninety-five thousand dollars ($695,000.00). Although Temple had her Georgia real estate license and could have requested a 35% referral fee from Thylander's commission, Temple did not ask for the referral fee because Thylander had financial issues and Temple wanted to help Thylander.

46.     Temple and BTemple each paid seventy-five thousand dollars ($75,000.00) for the one hundred fifty thousand dollars ($150,000) as a down-payment, and the seller owner-financed the balance of the four hundred forty-five thousand dollars ($545,000.00).

47.     Temple relied on BTemple's contract to split the costs of the farm 50/50.

48.     The sisters closed on the property in November 2008.

49.     In January 2009, BTemple moved to the farm from Atlanta from 2460 Peachtree, Apt. #1803, and she became a residennt. Temple remained in Atlanta in her home located on Blackland Drive.

50.     Unbeknownst to Temple, BTemple decided she wanted to move back to Atlanta and planned to stop paying her half of the farm expenses. BTemple fraudulently misrepresented to Temple that BTemple would continue to pay half of the expenses associated with the farm after she moved back to Atlanta. BTemple had no intention of honor the contract between she and her sister, Temple.

51.     In June 2009, BTemple emailed Temple that she was moving back to Atlanta. In the email, BTemple stated to Temple that she would continue to pay her half of the expenses of the farm, as they had agreed.

52.     Temple immediately put her personal home in Atlanta on the website, Vacation Rental by Owners, to lease her home as a vacation home. When Temple's Atlanta home started leasing, Temple decided to move to the farm permanently. The Blackland home generated a substantial income.

53.     On the evening of August 19, 2009, Temple and her minor child, GH, moved to the farm. Temple pulled a U-Haul trailer hitched to the back of her Tahoe and drove from Atlanta to Waynesville. They arrived at the farm around midnight.

54.     The next morning when Temple took her son to school, Temple saw the moving van at the guest house where BTemple lived. Temple took her son to his first day of school, then returned to the farm.

55.     Temple tried to talk to her sister but Thylander stood in her way and refused to allow Temple to speak with her sister. Temple asked Thylander where BTemple was moving. Thylander refused to tell Temple where her sister was going.

56.     After BTemple had cleared out, Temple went to the guest house. Temple found the keys and a note from BCT that stated, "The farm is all yours."

57.     On August 19, 2009, BTemple moved back to Atlanta and never paid another dime toward the expenses of the farm.  BTemple moved to 2460 Peachtree Road, NW, Apt.# 1701, Atlanta, GA, 30305.

58.     BTemple breached her contract with Temple.

59.     For the next four (4) years, Temple paid 100% of all expenses on the farm.

60.     Temple started an event facility on the farm, started a floral business, prop business, opened a shabby-chic store in downtown Waynesville, and started a trolley business. Plaintiff worked 7 days a week to support the farm and her son.

61.     When Temple could no longer stay afloat, the farm was foreclosed on in July 2013.

62.     Temple had to store her belongings in a dilapidated building that leaked, had mold and rats. Most of her things were ruined.

63.     BTemple is the proximate cause of Plaintiff losing the farm, her personal property, 5 businesses, being homeless, penniless, jobless and all that comes with being destitute.

64.     Temple lost custody of her minor child, who was ordered to live with an unfit parent as evidenced in a guardian ad litem report and recommendation in Temple's divorce.

65.     Temple's son was traumatized by the loss of his home, friends and family when he was forced to move to Florida to live with his father.

66.     BCT benefited from her actions/inactions, because she no longer paid her portion of the expenses for the farm.

67.     Plaintiff asked BTemple for help after the loss of the farm, but BTemple refused to help Temple.

68.     A friend of Temple's let her stay in his bed and breakfast for a month.

69.     Then another of friend, Jenny, offered Temple one of her rental homes so she could have a roof over her head. Temple had to sleep on a baby mattress in the vacant home for two weeks, until she could move furniture into the house. Her kind friend also took care of all the electricity; however, Temple could not afford the propane fuel to heat the house in winter, so she had to use small space heaters. BTemple still refused to financially help her sister, even though she was the cause of Temple's horrible situation.

70.     When Jenny rented the house in April 2014, Temple had to find another place to live. She again, asked her sister for help, but BTemple said no.

71.     Another of Temple's friends, Betty, offered Temple to live with her. Temple lived with Betty for over 2 years. Betty is one of the kindest women Temple has ever known.

72.     If not for her friends, Temple would have been on the street.

c.  **Atlanta 2016 - Current**

73.     In 2016, Temple needed to return to Atlanta, and she asked her sister if she could live with her. BTemple finally agreed to help Temple.

74.     In January 2016, Temple moved into her sister's one bedroom apt at 2460 Peachtree, Apt. # 1701. Temple, who was then 57 years old, slept on a sofa for 5 months.

75.     In June 2016, BTemple leased a two (2) bedroom apartment, so Temple could have a bedroom, because she had been sleeping on the sofa for months. They moved to apartment # 1703.

76.     In April 2019, Temple and BTemple agreed that BTemple would pay for one year of Temple's expenses which included the rent at 2460 Peachtree, food, gas, utilities, a 2018 Jeep BTemple bought and gave to Temple. Temple agreed to a forbearance on the 1.25 million if BTemple did not breach the contract.

77.     BTemple renewed the apartment lease for the year 2019-2020. BTemple agreed to pay all of Plaintiff's living expenses, including but not limited to rent, electricity, water, food, gas…. until 2020. If BTemple breached the contract, BTemple would be responsible for the entire debt from the loss of the farm. BTemple also agreed to pay all expenses on a 2018 Jeep Cherokee. BTemple agreed to pay Plaintiff's Public Storage.

78.     Plaintiff relied on the agreement with BTemple.

79.     Beginning in May 2019, BTemple began scheming, once again, to avoid paying Temple.

80.     First, BTemple began verbally harassing and abusing Temple and her son, who was living with them.

81.     BCT called the police and falsely accused Plaintiff of attacking her.

82.     On May 17, 2019, Plaintiff found out that she was not on the apartment lease.

83.     In mid-May, BTemple told Temple, Edwards would add her as an occupant.

84.     Temple received an email with a link to the 2460 Peachtree portal that confirmed she was listed as BTemple's roommate

85.     Temple received an email reminder from Waterton regarding the rent.

86.     Edwards is unprofessional. She has neglected her duty to her tenants.

87.     On June 2, 2019, BTemple called the police.

88.     When the police arrived, BTemple lied to the police that Temple had attacked BTemple. BTemple told the police that Temple did not live at the apartment and to get Temple out of the apartment.

89.     Temple showed the police mail with her name and the apartment address to prove she is a resident of 2460 Peachtree. The police told BTemple that it was a civil matter and they could not make Temple leave.

90.     BTemple went to the property manager's office to get Edwards to evict Temple.

91.     Temple told her son that BTemple was trying to get them evicted and she was trying to get Temple arrested for family violence.

92.     Temple's son became very anxious and went to the office to plead with his aunt not to evict them. Edwards had the police evict Temple's son.

93.     Edwards had Temple's son thrown out of the building. He doesn't have a driver's license; he had nowhere to go; he doesn't have a credit card; he was in a state of panic.

94.     Temple then went to the office to see what was going on.  She found out that Edwards had forced her son out of the building.

95.     Edwards then forced Temple to sit in the public lobby of the building in her pajamas for over an hour.

96.     Edwards lied to Temple, telling her the police were coming back with documentation. Temple asked what kind of documentation. Edwards' answer was very evasive.

97.     After over an hour, Temple called the police to find out what was happening and when were they returning. They had no idea what Edwards was talking about.

98.     The police officer told Edwards that Temple needed her purse and clothes so she could change out of her pajamas. Edwards would not let Temple back into her apartment. She would not let her get on the elevator to go up to her floor.

99.     Edwards went to the apartment and retrieved Temple's clothes and pocketbook. Temple asked her about the keys to the car and Edwards refused to go back to get them.

100.    Edwards told Temple she had to immediately leave the building.

101.    Temple pleaded with her to let her stay in the building, that she would be homeless, and she doesn't have a car to go anywhere.

102.    Edwards kept telling Temple she was not on the lease.

103.    Temple told to look at her 2460 Peachtree portal private page. She told her that it confirms she lives in apartment #1703 and is her sister's roommate.

104.    Edwards stated that anyone could be on the portal. She used the example that even her mom could be on the portal to pay for her rent.

105.    Temple told her that that was not the case, and that the portal states that Temple is BTemple's roommate.

106.    Edwards still refused to allow Temple back up to her apartment, again forcing Temple to sit in the lobby.

107.    Temple told Edwards over and over that she had nowhere to go and that she would be homeless.

108.    Temple also told Edwards that she could not deny her access to her apartment

109.    Edwards kept telling Temple that she isn't on the lease and she can't be in the apartment.

110.   Edwards kept stating that she was discussing the situation with the landlord's attorney.

111.   Finally, Temple was allowed back on the seventeenth floor but she was not given access to her apartment.

112.   Temple was forced to sit on the floor, in the hallway outside her apt, because her sister refused to allow her into the apartment and Edwards refused to let her into the apartment.

113.   Then Edwards began telling Temple to provide a lease with Temple's name on it, Edwards would give her a key for her apartment. Mind you, Temple is sitting in the hallway, outside her apartment with her two dogs and no way to get in to get a copy of a lease.

114.   Temple stated to Edwards hat she couldn't get to a lease because she could not get back into her apartment without Edwards letting her into her apartment. And, Edwards refused to let Temple back into her own apartment.

115.   Temple was forced to remain in the hallway without a car, without a place to go, no money to get anywhere, and no money for a hotel.

116.   BTemple refused to give Temple the keys to the Jeep.

117.   Temple is a mature 60-year-old woman. Throughout her in her dealings with Edwards and the police, she was respectful. However, the police and Edwards were incredibly disrespectful to Temple. At one point, one of the officers had the audacity to take his handcuffs off his belt as if he were going to arrest Temple.

118.   Edwards and BTemple actions were willful, wanton and vicious. Temple was in shock.

119.   Temple told Edwards that she had lived in the building since January 2016.

120.    Temple wanted to go outside to check on her son. She asked the concierge if she would let her back into the building, if she went outside. The Concierge told Temple she could not let her back into the building if she left.

121.    Once Temple was back on the hallway, she called the office, but Edwards would not take her call.

122.    An hour later, Edwards came to the floor and told Temple that she would return to deal with the situation, after she complete the move-ins for new tenants.

123.    Unbeknownst to Temple, maintenance arrived to change the lock on the apartment.

124.    But when Temple tried to force her way back into her apartment, BTemple slammed the door on her.

125.    Another hour later went by then Edward came back upstairs with *no intention* of helping Temple. In fact, Edwards had called the police again and brought that police officer with her to meet with Temple. Edwards told Temple she would not let Temple into her apartment without Temple providing a lease with her name on it. Then Edwards immediately got on the elevator leaving Temple with the police officer, who could not do anything to help Temple.

126.    Temple for the fifth time explained what had happened to her.

127.    The police officer and Temple walked down the hall so police could speak with BTemple.

128.    BTemple stilled refused to let Temple back into her apartment.

129.    Maintenance reappeared to change the locks.

130.    The police officer left and went back to the office to figure out what he could do to help.

131.    Maintenance changed the lock and took off the bar lock.

132.    When Temple asked for a key, she was told that Edwards had instructed them not to give her a key.

133.    Edwards has never given Temple a key to her apartment and Temple's access cards to the building and underground parking have been deactivated.

### d.  Violation of procedural due process.

134.    2460 Peachtree filed a Notice of Dispossessory and Temple was served on July 16, 2019.

135.    Temple timely filed her Answer and Counterclaim, Amended Answer and Motion to Dismiss.

136.    The Court scheduled the hearing for August 6, 2019.

137.    When Temple arrived in the courtroom, she stepped up to the bar and waited for Judge De Foor to recognize her so she could address the Court. She told the judge that she had filed an answer and counterclaim, an amended answer and that she wanted to present to the Court her Motion to Dismiss. She stated she could make an oral motion or that she had prepared a pleading to present to the Court.

138.    Judge De Foor asked her to have a seat.

139.    Temple waited several minutes then back out to the hallway, where she found her sister.

140.    Temple told BTemple that she had a motion to dismiss that she wanted to present to the judge.

141.    BTemple told Temple that she was going to negotiate more time so Temple could find a place to move. Temple asked if she could meet with the mediator too.

142.     BTemple told her that 2460 Peachtree's attorney was there. She pointed to him down the hall and stated that he was working with some other tenants then she was next.

143.     When Barnes was finished, he called BTemple and told her they were going into a meeting room. As they were going in, Temple told him she is also a tenant and she wanted to be in the negotiations. He told her no.

144.     Temple was persistent in stating she is also a tenant and that she had a motion to dismiss that she wanted to present to the Court.

145.     Barnes became *very* aggressive, telling Temple to get out of the meeting room.

146.     Temple gave a copy of the Motion to Dismiss to BTemple and told her not to sign anything.

147.     Temple went back into the courtroom to address Judge De Foor to let him know Barnes had denied her the right to be in the meeting. Judge De Foor, again, told Temple to have a seat and he would look at the case filings. So, Temple sat back down. Judge De Foor did not view his computer to review the pleadings in the case.

148.     Temple left the courtroom and ran to the Magistrate Clerk of Court to file her Motion to Dismiss. She immediately filed the motion and ran back to the courtroom and once again, approached the bar and waited for the judge to recognize her.

149.     He did not. His assistant approached Temple and asked her to go with her into the hallway.

150.     The assistant then told Temple that the Judge was not going to hear from Temple that day. Temple told her that she had just filed her Motion to Dismiss and that she wanted to go before the judge to present her case against 2460 Peachtree, but the assistant denied her the right to do so.

151.   Temple saw her sister. BTemple told her that she had signed an agreement and she was waiting on a copy.

152.   A young lady brought the agreement to BTemple. She told BTemple that the judge had to sign it.

153.   Temple looked at the agreement which stated that tenant [BTemple] had agreed to withdraw her counterclaim, but it wasn't BTemple's counterclaim to withdraw.

154.   On August 23, 2019, when Temple went on line to see if an order had been filed on her Motion to Dismiss, the order stated the motion was moot and that the *tenants* had signed a consent agreement.

155.   Temple had not, nor did not, sign a consent agreement.

156.   2460 Peachtree got their Writ of Dispossessory by colluding with Judge De Foor to deny Temple's Constitutional right to due process. She was never allowed to address the court with her arguments that had merit.

157.   This is a violation of the U.S. Constitution.

## V.   COUNTS

### COUNT I
### 42 U.S.C. § 1983
### Procedural Due Process

158.   Plaintiff restates and realleges paragraphs 30-32, 73-157 of this Complaint as if fully set forth herein.

159.   Judge De Foor, under color of law, denied Temple her Constitutional right to address the Court and argue her Answer and Counterclaim, Amended Answer, and Motion to Dismiss, a violation of her procedural due process.

160.    Barnes colluded with Judge De Foor to deny Temple's Constitutional right to procedural due process.

161.    Barnes, who is employed by one of the many Waterton companies, to be determined at discovery, colluded with Barnes and Judge De Foor to violate Temple's right to procedural due process.

162.    The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.

163.    Judge De Foor, Barnes and Waterton are the proximate cause of the eviction set for tonight at midnight, August 28, 2019.

## COUNT II
## BREACH OF CONTRACT

164.    Plaintiff restates and realleges paragraphs 19-29, 33-133 of this Complaint as if fully set forth herein.

165.    BTemple and Temple had a contract for BTemple to pay for Temple's expenses for one year, June 2019 – June 2020.

166.    Temple gave BTemple a forbearance on the debt from the loss if BTemple did not breach the contract.

167.    BTemple breached the contract.

168.    BTemple is the proximate cause of Temple's losses of the farm, personal property and five business worth $1,250,000.00.

169.    BTemple owes Temple $1,250,000.00.

## COUNT III
## WRONGFUL CONSTRUCTIVE EVICTION
## TRESPASS

170.    Plaintiff restates and realleges paragraphs 28, 29, 73-133 of this Complaint as if fully set forth herein.

171.    Edwards intentionally changed the locks on Temple's apartment and did not give her a key, forcing Temple out of her apartment.

172.    Edwards is the proximate cause of Temple's severe hair loss due to the intentional abuse from Edwards, BTemple and the police.

## COUNT VIII
## NEGLIGENCE PER SE

173.    Plaintiff restates and realleges paragraphs 28, 29, 73-133 of this Complaint as if fully set forth herein.

174.    Plaintiff is a tenant in 2460 Peachtree.

175.    Under Landlord- Tenant Laws, Edwards as the property manager has a duty to provide a key to a tenant; however, Edwards has refused to give Plaintiff a key to her apartment. Even worse, Edwards changed the locks to prevent Plaintiff access to the apartment. Plaintiff successfully and legally returned to her apartment when the door was open. Plaintiff has contacted Edwards several times to get a key to her apartment but Edwards refuses to do so.

176.    As a tenant, the landlord, nor management can refuse to give a key to its tenant.

177.    Plaintiff had to call the police several months ago because a man was in the stairwell on the 17th floor at 5:00 in the morning.

178.    But for Edwards not give Plaintiff a key, Plaintiff is exposed to an unsafe environment.

WHEREFORE Plaintiff request that the Court:

    a)  Order a Temporary Injunction of the eviction against Temple;

b) Order a judgment in favor of the plaintiff on all of the causes of action in the complaint;

c) Order compensatory damages in favor of Plaintiff;

d) Order general damages in favor of Plaintiff;

e) Order additional punitive damages in favor of Plaintiff;

f) And any other relief that the court deems fair and proper.

Respectfully submitted this 27th day of August 2019.

Tandra G. Temple
2460 Peachtree Road, NW
Apt. #1703
Atlanta, GA  30305
404-450-9052
tanditemple@gmail.com